**FERRERO U.S.A., INC.**

v.

**OZAK TRADING, INC.; Doron Gratch, Appellants.**

No. 91–5357.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 16, 1991.

Decided Dec. 19, 1991.

Gerard F. Dunne, Wyatt, Gerber, Burke & Badie, New York City, for appellants.

Frank Holahan, Harwood Lloyd, Hackensack, N.J., G. Franklin Rothwell, Raymond A. Kurz, Celine M. Jimenez, Rothwell, Figg, Ernst & Kurz, Washington, D.C., for appellee.

Before SLOVITER, Chief Judge, and COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This is the second appeal arising out of a case brought under the Lanham Act by Ferrero U.S.A., Inc. against Ozak Trading, Inc. and its president, Doron Gratch (jointly referred to as Ozak), for Ozak's parallel importation of TIC TAC breath mints manufactured for distribution in the United Kingdom. In this appeal Ozak challenges the district court's award of attorneys' fees and expenses to Ferrero U.S.A. in the amount of $160,997.11. We must consider whether the successful plaintiff made a showing that the case was "exceptional," the statutory predicate for award of attorneys' fees.

### I.

*Factual History and Procedural Posture*

Ferrero U.S.A., the exclusive United States distributor of TIC TAC mints, brought suit in the District Court for the District of New Jersey claiming that Ozak's importation of genuine TIC TAC mints that differed in size and calorie content from those imported and advertised by Ferrero U.S.A. constituted trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) (1988). After a bench trial, the district court agreed with plaintiff's position that Ozak's importation of these "gray market goods," [1] which had been manufac-

---

1. As described by the trial court, gray market goods are "foreign manufactured goods, reg-istered under a valid United States trademark, that are legally purchased abroad and imported

tured for distribution in the United Kingdom, violated the statute. The court permanently enjoined Ozak from future importation, but declined to award damages "[d]ue to failure of proof." *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F.Supp. 1240, 1241 (D.N.J.1991). Although it awarded no compensatory or punitive damages, the district court stated at the conclusion of its opinion that "because this case is 'exceptional' under the Lanham Act, the Court will award reasonable attorneys' fees and costs." *Id.* at 1247.

Ozak filed a notice of appeal that stated it contested the district court's judgment on the merits, the injunction, and "the award of attorneys' fees." Thereafter, Ozak moved that we delay submission of the briefs until after the district court calculated the amount of the attorneys' fees awarded. We denied the motion without prejudice to a subsequent consolidation, if feasible, of the original appeal together with any new appeal from the order deciding the attorneys' fees issue. Ozak thereafter briefed the appeal, limiting its arguments to the merits of the district court's grant of permanent injunctive relief.

In a Memorandum Opinion filed on May 29, 1991, this court affirmed the award of injunctive relief, holding that the district court's factual findings that there were differences between the TIC TACs at issue were not clearly erroneous. We also held that the court did not err as a matter of law in concluding that the differences were material. *Cf. Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659, 671 (3d Cir.) (importation of gray market goods that do not materially differ from goods manufactured for sale in the United States not violation of 15 U.S.C. § 1114(1)), *cert. denied*, 493 U.S. 853 (1989). We noted that because Ferrero U.S.A.'s TIC TACs had 1½ calorie

into the United States without the consent of the American trademark holder/authorized distributor." *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F.Supp. 1240, 1241 n. 1 (D.N.J.1991); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285, 108 S.Ct. 1811, 1814–15, 100 L.Ed.2d 313 (1988). This practice is also referred to as parallel importation. *See Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659, 662 n. 1 (3d Cir.), *cert. denied*, 493 U.S. 853, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989).

per mint, contained sugar and were sold in packages labeled with nutritional information that conformed with FDA requirements whereas the TIC TACs imported by Ozak had 2 calories per mint, a fructose sweetener, and were packaged with labeling using European rather than FDA identifiers, there was likely to be consumer confusion. *See Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68 (2d Cir.) (affirming permanent injunction against importer of gray market goods, which, while genuine, exhibited sufficient material differences to generate potential customer confusion as to source of product), *cert. denied*, 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987). Those holdings are the law of the case and, of course, are not before us for review.

While the initial appeal was pending, the district court awarded Ferrero U.S.A. $160,997.11 in attorneys' fees. Ozak's appeal from that order is before us. Ozak challenges the propriety of any award of attorneys' fees, declining to contest the amount. Ferrero U.S.A. argues that Ozak waived its challenge to the award of attorneys' fees and that even if Ozak could address that issue, the district court neither abused its discretion nor otherwise erred in finding that the case was exceptional.

## II.

### *Discussion*

#### A.

#### *Appealability*

■ Ferrero U.S.A. argues that Ozak waived the issue of the propriety of the attorneys' fee award by failing to raise that issue in its briefs in the first appeal.[2]

2. Ferrero U.S.A. relies on *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 755 F.2d 38, 40 n. 2 (3d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985), for this proposition. In that case the court noted that because appellants had failed to brief an issue raised in its notice of appeal, they had thus waived that issue on appeal.

Ferrero U.S.A. is plainly mistaken. It is well established law in this circuit that this court does not have jurisdiction under 28 U.S.C. § 1291 over a fee award until it has been quantified. *See Frangos v. Doering Equip. Corp.*, 860 F.2d 70, 72 (3d Cir.1988) ("It has long been the rule in this circuit that this court lacks jurisdiction to examine the merits of an attorneys' fee award where the award has not been quantified."); *Saber v. Financeamerica Credit Corp.*, 843 F.2d 697, 704 (3d Cir.1988) ("[A]ppeals from awards of attorney's fees may be filed only after the amount of the attorney's fees has been determined by the district court."); *Becton Dickinson & Co. v. District 65, UAW*, 799 F.2d 57, 61 (3d Cir.1986).

When the briefs were filed in the first appeal, the district court had not yet quantified the fee award. It was only after the amount of the fees were set by the district court that we acquired jurisdiction to review both issues. Ozak cannot have waived an issue that this court had no authority to hear, even though it had purported to raise the attorneys' fee issue in its notice of appeal. This second appeal affords Ozak its only opportunity to challenge the final judgment and order of the district court to award attorneys' fees to Ferrero U.S.A., because subsumed in the court's order was its prior determination that an award of fees was appropriate.

### B.

#### The Attorneys' Fees Award

In 1975, Congress amended the Lanham Act to permit the award of attorneys' fees to the "prevailing party," but specified that such an award should be made only in "exceptional" cases. 15 U.S.C. § 1117(a) (1988). The Senate Report stated that attorneys' fees should be awarded where the infringing acts "can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" S.Rep. No. 1400, 93d Cong., 2d Sess. 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133. The courts have adopted that as the standard. *See Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778, 782 n. 7 (3d Cir.1986); *see*

*also Knorr–Nahrmittel A.G. v. Reese Finer Foods, Inc.*, 695 F.Supp. 787, 795 (D.N.J.1988) ("Deliberate and willful infringement can render a case 'exceptional' and, thus, support an award of attorneys' fees.").

Unfortunately, the statute does not define "exceptional" and the legislative history is not informative as to the meaning of the terms "malicious, fraudulent, deliberate, or willful." Courts have differed as to the type of conduct that is to be so viewed. *See generally* Robin C. Larner, Annotation, *Award of Attorneys' Fees Under § 35(a) of Lanham Act (15 USCS § 1117(a)) Authorizing Award in "Exceptional Cases"*, 82 A.L.R.Fed. 143 (1987); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521 (D.C.Cir.1985).

We are persuaded by the line of cases holding that a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as "exceptional." *See, e.g., Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir.1982) ("An award of attorneys' fees ... should be made only in exceptional circumstances and on evidence of fraud or bad faith."); *Brand v. NCC Corp.*, 540 F.Supp. 562, 565 (E.D.Pa.1982) ("While the statute fails to define 'exceptional,' it has been interpreted to require a finding of intentionality akin to malice or fraud."); *Salton Inc. v. Cornwall Corp.*, 477 F.Supp. 975, 992 n. 11 (D.N.J.1979) ("Costs may be given [under the Lanham Act] only if the conduct of the losing party sinks to the level of being fraudulent or in bad faith."); *Vermont Castings, Inc. v. Evans Prods. Co., Grossman's Div.*, 215 U.S.P.Q. 764, 766 (D.Vt.1981) (exceptional case where defendant copied design of plaintiff's stoves "knowing that the copies would cause confusion and with an intent to benefit from the good will plaintiff had nurtured").

A factor deemed relevant to some courts in declining to award attorneys' fees under section 1117(a) has been the plaintiff's failure to show any damages. *See, e.g., Hindu Incense v. Meadows*, 692 F.2d 1048,

1052 (6th Cir.1982) ("[Plaintiff] admitted that there has been no loss of sales due to the infringement. Such a finding generally makes the case unexceptional for purposes of awarding fees under § 1117."); *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir.1982) (lack of evidence to show that plaintiff suffered monetary damages and lack of finding by district court that defendant intended to deceive or confuse public or willfully infringe plaintiff's trademark made for unexceptional case).

The district court opinion in *Jones Apparel Group, Inc. v. Steinman*, 466 F.Supp. 560, 564 (E.D.Pa.1979), represents a reasoned exposition of what constitutes an exceptional case. In that case, Judge Pollak stated that bad faith intentionally must be shown for a case to qualify as exceptional; it must be demonstrated that the "defendant intended to pass off" goods he was selling as those manufactured by the plaintiff, and "[a] strong showing would seem [to be] required to warrant a finding of intentionality." *Id.*

 In an appeal from an award of attorneys' fees under the Lanham Act, we review the district court's decision for abuse of discretion, *see Reader's Digest Ass'n. v. Conservative Digest, Inc.*, 821 F.2d 800, 808 (D.C.Cir.1987); *Standard Terry Mills, Inc.*, 803 F.2d at 782; *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 608 (3d Cir.1978), unless, of course, the district court applied the wrong standard, which would be an error of law. Thus, the trial court's exercise of discretion will not be disturbed "unless there is a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Playboy Enters. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir.1982) (quoting *Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1331 (9th Cir.1981)).

Cases from other circuits that have considered the issue before us are informative. In *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 921 (Fed.Cir.1984), the court held that the district court abused its dis-

cretion when it found that case to be exceptional "without stating the basis therefor." The court stated that, "[s]uch a practice frustrates appellate review, unless bad faith or deliberate and willful infringement is blatant." *Id.* Because it was "unable to find in the record evidence of the factors delineated by Congress as justifying the classification of a case as 'exceptional,'" the court concluded that the award of attorneys' fees for the trademark infringement was an abuse of discretion. *Id.; see also Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1125 (7th Cir.1988).

Similarly, in *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958 (D.C.Cir. 1990), Judge (now Justice) Thomas noted that "[i]n announcing its fee awards, the district court did not expressly find that Ralston had acted willfully or in bad faith. Indeed, it made no finding that this case is 'exceptional' in any respect." *Id.* at 971. Indeed, after reversing the decision to award attorneys' fees the Court of Appeals declined to remand, explaining: "neither the [district] court's opinion nor its later statements support the award with a finding of willfulness or bad faith, and ... we have decided that any such finding would be clearly erroneous." *Id.; see also Traex*, 846 F.2d at 1126 ("defendant's conduct was clearly reasonable and remanding on this issue would only serve to further delay this case, harass both parties and increase the cost of the litigation.").

 In the case before us the district court failed to provide any reasoned basis for the award of attorneys' fees in favor of Ferrero U.S.A. Although the court concluded that "this case qualifies as an exceptional case," 753 F.Supp. at 1241, it made no explicit finding in either its published opinion or its subsequent letter opinion quantifying the attorneys' fee award that Ozak acted willfully or in bad faith. In addition, the facts of this case do not lead to the inference that Ozak acted in a deliberate or willful manner.

Our research has not revealed any case addressing the issue of attorneys' fees in the context of the importation of gray market goods. Typically, attorneys' fee cases

involve deliberate attempts by the defendant to pass off its goods as those of the plaintiff by applying plaintiff's trademark to defendant's goods. *See, e.g., Knorr–Nahrmittel*, 695 F.Supp. at 795–96 (defendant's deliberate attempt to copy plaintiff's packaging design in order to promote defendant's sales of its own soup mix constituted "exceptional" case); *Bagdasarian Prods. v. Audiofidelity Enters.*, 225 U.S.P.Q. 53, 61 (D.N.J.1984) (defendant's deliberate use of plaintiff's trademark, THE CHIPMUNKS, as well as other techniques designed to exploit good will developed by plaintiff qualified case as "exceptional"), *aff'd mem*, 772 F.2d 893 (3d Cir. 1985).

We are not presented with a case where a defendant has imitated the plaintiff's trademark in order to free ride on the good will built up by the plaintiff. The mints purchased by Ozak on the world market legitimately bore the trademarks of Ferrero U.S.A.'s Italian affiliate, Ferrero S.p.A., and these trademarks were affixed with the approval of that Italian affiliate.[3] Ozak paid for the right to use the TIC TAC trademark when it purchased the TIC TAC mints on the world market.

The district court's opinion centered on the material differences between the TIC TAC mints sold by Ferrero U.S.A. and those sold by Ozak. Although we earlier upheld the district court's conclusion that the differences in composition between the two types of TIC TAC mints qualified as "material," it does not follow that Ozak's importation of the U.K. TIC TAC mints rises to the level of bad faith, malice, fraud, or even willfulness.

The liability issue was a close one, since the parallel importation of genuine goods that do not materially differ from their domestic counterparts does not violate the Lanham Act. *See Weil Ceramics*, 878 F.2d 659. When Ozak began importing U.K. TIC TAC mints on December 30, 1986,

the legality of importation of gray market goods was unsettled. *See NEC Elecs. v. Cal Circuit Abco*, 810 F.2d 1506 (9th Cir. Feb. 24, 1987), (holding that parallel importation of genuine goods does not violate Lanham Act), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). Although this court's decision in *Weil Ceramics* followed Ozak's importation of U.K. TIC TAC brand breath mints, even the district court decision in *Weil Ceramics* that we reversed expressly acknowledged that "courts have split" as to whether parallel importation of genuine goods violates the Lanham Act. *Weil Ceramics*, 618 F.Supp. 700, 706 (D.N.J.1985). Moreover, the absence of a finding of pecuniary loss on the part of Ferrero U.S.A. bears on the appropriateness of the attorneys' fees award. *See Bandag*, 750 F.2d at 921 ("[i]n the absence of a[ny] proof of any actual damages, injunctive relief satisfies [all] the equities of this case.").

In short, there is no evidence demonstrating bad faith on the part of Ozak so as to make this case exceptional. Ferrero U.S.A. points to nothing in the record that suggests that Ozak knew that the differences between the U.K. TIC TACs and the U.S.A. TIC TACs would rise to a level of materiality as to constitute a Lanham Act violation or that Ozak's importation of the U.K. TIC TAC mints demonstrated a willful attempt to pass off its inferior product as that of Ferrero U.S.A. We conclude, therefore, that the district court based its finding of exceptionality on an erroneous legal standard, and that the award of attorneys' fees was not a sound exercise of its discretion.

### III.

#### Conclusion

For the reasons set forth, we will reverse the award of attorneys' fees in

---

**3.** As the district court stated: "Ferrero U.S.A. and Ferrero S.p.A. are sister companies under the ultimate control of Intercandy, B.V." 753 F.Supp. at 1242. Ferrero S.p.A. manufactures several confectionery products including TIC TAC brand breath mints. Ferrero S.p.A. granted to Ferrero U.S.A. the exclusive right to distribute TIC TAC brand breath mints in the United States in 1969.

favor of Ferrero U.S.A. We will, however, require Ozak to pay the costs on appeal.[4]

---

**4.** We take this unusual step because we find that in submitting the appendix for this appeal Ozak violated Fed.R.App.P. 30, which "encourage[s the parties] to agree as to the contents of the appendix." First, by not including a copy of the district court's initial opinion finding the case exceptional for purposes of the award of attorneys' fees, Ozak violated Fed.R.App.P. 30(a), which requires, *inter alia,* that any relevant opinion be included in the appendix. Second, the appendix submitted by Ozak was missing 13 pages, demonstrating extreme carelessness on Ozak's part. Finally, Ozak does not deny Ferrero U.S.A.'s allegation that Ozak failed to contact Ferrero U.S.A. about the contents of the appendix prior to submission to this court. *See* Fed. R.App.P. 30(b) and (c).

Therefore, under the authority of Local Rule 21.4, we impose costs on Ozak as an appropriate sanction. *See Matthews v. Freedman,* 882 F.2d 83, 85–86 (3d Cir.1989) (imposing sanctions because of appellant's refusal to accommodate appellee's request to include in appendix certain parts of trial record); *Blue Pearl Music Corp. v. Bradford,* 728 F.2d 603, 607 n. 7 (3d Cir.1984) (imposing sanctions because appendix did "not contain all the materials required by court rule and was not properly paginated").