

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2007

# Basketball Marketing v. FX Digital Media Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2216

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Basketball Marketing v. FX Digital Media Inc" (2007). *2007 Decisions.* Paper 106.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/106

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos:  06-2216 & 06-3274

THE BASKETBALL MARKETING COMPANY, INC.
doing business as AND 1; BMC PLAYERS, INC.,

Appellants

v.

FX DIGITAL MEDIA, INC.; COLUMBUS WOODRUFF;
TIM GITTENS, also known as Headache

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(04-cv-01733)
District Judge: Hon. Juan R. Sanchez

Argued: October 3, 2007
Before: McKee, Barry & Fisher, Circuit Judges
(Filed December 11, 2007)

Barry L. Cohen, Esq. **Argued**
Thorp, Reed & Armstrong
2005 Market Street
One Commerce Square, Suite 1910
Philadelphia, PA 19103

*Attorney for Appellants*

Conrad O. Kattner, Esq.
McShea & Tecce
1717 Arch Street
28th Floor, The Bell Atlantic Tower
Philadelphia, PA 19103

*Attorney for Appellees FX Digital Media, Inc.*

*and Columbus Woodruff*

Gene M. Linkmeyer, Esq.
Matthew I. Cohen, Esq.
Joshua A. Gelman, Esq. **Argued**
Jacobs Law Group
1800 John F. Kennedy Boulevard
Suite 404
Philadelphia, PA 19103-7405

*Attorneys for Appellee Tim Gittens*

OPINION

McKee, <u>Circuit Judge</u>

The Basketball Marketing Company, Inc. d/b/a AND 1 and BMC Players, Inc. (collectively "AND 1" or "Plaintiffs") appeal the verdict the trial court entered in favor of Tim Gittens a/k/a "Headache," in this trademark infringement action, as well as the attorney's fees the court awarded to Gittens.[1] For the reasons that follow, we will affirm the verdict in favor of Gittens, but reverse the order awarding Gittens attorney's fees.

**I.**

Inasmuch as we write primarily for the parties who are familiar with this case, we need not set forth the factual or procedural background except insofar as may be helpful to our brief discussion.

---

[1] Plaintiffs also sued FX Digital Media, Inc., ("FX"), and Columbus Woodruff, but both of those defendants defaulted, and those claims are not before us. AND 1 originally appealed the zero damages and fees award entered in favor of FX and Woodruff, but those claims were settled prior to argument in this appeal and are also not before us.

## II. Trademark Infringement

AND 1 claimed that Woodruff, FX and Gittens engaged in trademark infringement and false advertising in violation of the Lanham Act.[2] Accordingly, AND 1 had to prove that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the

---

[2] Section 1125 of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 1114 of the Lanham Act provides:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(a).

3

defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

It is undisputed that AND 1 owns the mark and that the mark is legally protected. However, AND 1 claims that the district court erred in finding that Gittens' use of AND 1's mark did not create a likelihood of confusion, and that Gittens had no secondary or "contributory liability" for the defaulting defendants' use of AND 1's marks.

We review the court's factual findings for clear error, but the court's legal rulings are subject to *de novo* review. *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 461(3d Cir. 2006). We review the court's determination of the likelihood of confusion for clear error. *Century 21 Real Estate Corp. v. Lendintree, Inc.*, 425 F.3d 211, 226 n.5 (3d Cir. 2005).

**A. Direct Infringement**

In *Interpace Corporation v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983), we developed a ten-factor inquiry to determine whether the use of a protectable mark creates the "likelihood of confusion" required for trademark infringement. AND 1 argues that the district court erred because it limited its analysis to some of those factors rather than applying all ten. In the alternative, AND 1 argues that the evidence established a likelihood of confusion based only upon the *Lapp* factors that the district court did examine. We disagree.

We have previously explained that the *Lapp* test is a qualitative inquiry, and "[n]ot all factors will be relevant in all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting." *A & H*, 237 F.3d at 215. Accordingly, the district court can not be faulted for failing to apply all ten *Lapp* factors.[3] As we explain below, on this record, there was no need for the district court to apply a *Lapp* analysis in the first place. Thus, the court certainly did not err in not employing all of those factors in the analysis it did undertake.

Initially, we note that AND 1's argument conflates the actions of Gittens and the actions of the defaulting defendants. By defaulting, Woodruff and FX constructively admitted that the flyers advertising the Legends Tour infringed on AND 1's marks. However, Plaintiffs must still prove a likelihood of confusion arising from Gittens' actions to establish a claim of direct infringement against Gittens.

The district court found that Gittens did not design or create the infringing flyers for the Streetball Legends games, and the record supports that conclusion. Therefore, Gittens can not be directly liable for any "likelihood of confusion" that may have resulted

---

[3] Although it was not necessary to apply all of the *Lapp* factors, we have explained the importance of explaining the choice of *Lapp* factors relied upon. *See, e.g., A&H*, 237 F.3d at 215, n.8 ("Although a district court may reasonably decide that certain of the *Lapp* factors are inapplicable or unhelpful in a particular case, we do counsel that, to facilitate review, the court explain its choice not to employ those factors."); *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) ("We have instructed that, if a district court decides that certain of the *Lapp* factors do not advance its analysis, it should explain the reason for not using those factors in order to facilitate our review.").

from the flyers, even though he distributed them.[4]  *See, e.g., Allen Organ Co. v. Galanti Organ Builders Inc.*, 798 F. Supp. 1162, 1166-70 (E.D. Pa. 1992) (finding manufacturer and wholesaler not liable for false advertising where they did not participate in preparation of the advertisements), *aff'd*, 995 F.2d 215 (3d Cir. 1993).

Nor are we persuaded by Plaintiffs' argument that Gittens is liable as an infringer because of his role in organizing the Legends Tour.  The district court explained that "AND 1 has introduced no evidence that Gittens used AND 1's marks in any way in arranging for players to play in the Streetball Legends games."  Mem. op. at 9, n.4.  We see no evidence of error, clear or otherwise, in this finding.

AND 1's attempt to rely upon Gittens' use of its mark on his autograph cards, uniform, and on a basketball, is nothing short of frivolous.  As the district court explained, the Endorsement Agreement Gittens had with AND 1 required him to use "reasonable efforts to wear and use exclusively AND 1 Products throughout the term of this Agreement while participating or attending all athletic activities, including . . . any occasion during which he wears athletic apparel and/or poses for photographs."  Indeed, had Gittens not used AND 1's mark as he did, he would have been exposed to a claim of breach of contract under that Endorsement Agreement.  AND 1 can not require Gittens to use its mark and then attempt to hold him liable for infringement of the mark when he

---

[4] We separately consider the charge of contributory infringement against Gittens below.

complies.

**B. Contributory Infringement**

To establish contributory infringement, AND 1 must establish Gittens knew that another's use of a product infringed And 1's mark. *AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1432 (3d Cir. 1994) See also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement. . . ."). The district court found that Gittens did not knowingly promote or facilitate any infringement of AND 1's marks. Again, we agree.

Plaintiffs again point to Gittens' role in organizing players and handing out flyers for the games. However, even if we were convinced that these acts established liability (a proposition that we doubt),[5] Plaintiffs' claim would still fail because they have not established that Gittens knew of any underlying infringement. To the contrary, since an AND 1 consultant designed the flyers and initially participated in organizing and advertising the Legends Tour, Gittens had every reason to believe the nominative use of AND 1's marks was authorized (at least tacitly) by AND 1. The district court found that

---

[5] Cases finding contributory infringement usually involve more central participation than is to be found on this record. *See Transdermal Products, Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 553 (E.D. Pa. 1996) ("[T]he vast majority of contributory infringement cases have concerned manufacturers who sold generic products to retailers and either encouraged these retailers to infringe a trademark or, knowing that these retailers were infringing a trademark, continued to supply the products.")

AND 1 had not provided any affirmative evidence that Gittens knew FX and Woodruff were infringing AND 1's marks, and Plaintiffs have pointed to nothing to undermine that conclusion. Inadvertent participation in infringing activities does not give rise to contributory liability. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("[O]ne who, *with knowledge* of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer.") (citation and internal quotation marks omitted) (emphasis added).

### III. Breach of Contract

Plaintiffs contend the district court erred in concluding that Gittens did not breach the Endorsement Agreement. The argument is meritless, and we will affirm the district court's verdict, substantially for the reasons set forth in the court's Memorandum and Order. Mem. op. at 14-15. We need only add, as stated above, there is no evidence that Gittens knew anyone was infringing AND 1's mark. Absent evidence of such knowledge, Gittens can not be liable for failure to report third party infringement pursuant to his contract with AND 1. Moreover, the evidence tends to show that AND 1 and its representatives were aware of the Legends Tour from its inception and had access to at least some of the marketing flyers.

### III. Award of Attorney's Fees

The final issue raised is the award of attorney's fees to Gittens. The district court

8

appears to have concluded that AND 1 filed this suit in retaliation for a lawsuit Gittens

filed against AND 1 thirty-six days earlier,[6] and therefore awarded Gittens attorney's fees

under section 35 of the Lanham Act, 15 U.S.C. § 1117(a).[7]  AND 1 argues this is not an

"exceptional" case warranting an award of attorney's fees because AND 1 had a

meritorious claim and there was no evidence of retaliatory intent other than Gittens'

assertion.

We review an appeal from an award of attorney's fees under the Lanham Act for

an abuse of discretion, unless the district court applied the incorrect standard.  *Ferrero*

*U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 48 (3d Cir. 1991).[8]  Our examination of

the "exceptional circumstances" standard under § 35(a) is plenary.  *SecuraComm*

*Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 279 (3d Cir. 2000).

Abuse of the litigation process may justify an award of fees to a prevailing party

---

[6] AND 1 points out that this finding is not clearly stated.  Although in some instances we have remanded for a clearer statement from the district court, we decline to do so here as we find that the record does not clearly indicate "bad faith, fraud or malice" on the part of AND 1.

[7]  This section reads in pertinent part: "The court in exceptional circumstances may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

[8] We decline Gittens' invitation to disregard our own precedent and follow the lead of those circuits that employ a "clear error" standard of review.  *See* Third Circuit Internal Operating Procedure 9.1 ("It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so."); *Auguste v. Ridge*, 395 F.3d 123, 149 (3d Cir. 2005) (applying same).

under the Lanham Act. *See SecuraComm*, 224 F.3d at 279-83 (upholding fee award to plaintiff where rather than "litigating the case fairly on the merits," defendant attempted to "crush" plaintiff financially by instituting several separate actions in multiple fora). Determining the propriety of any such award is a two-step inquiry. First, the district court must determine whether the party engaged in culpable conduct such as bad faith, fraud or malice. *Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007) (citing *Ferrero*, 952 F.2d at 47). Secondly, if there is culpable conduct, the district court determines if the "circumstances are 'exceptional' enough to warrant a fee award." *Green*, 486 F.3d at 103.

Here, in concluding that this suit was retaliatory, the district court appears to have relied solely on the facts that AND 1 filed this action thirty-six days after Gittens sued AND 1, and AND 1 only sued Gittens and no other streetball players. Neither consideration demonstrates the "culpable conduct" required for an attorney's fee award.

It is not hard to understand why AND 1 only sued Gittens. His involvement in the Legends Tour was far more extensive than other players. He obtained players for the tournament and he shepherded them to the games. He arguably functioned more like a promoter than a mere player.

Furthermore, assuming *arguendo* that a retaliatory motive is an "exceptional circumstance" that would justify awarding fees, more is needed to establish such a motive than the mere fact that one suit closely follows another. It is certainly not uncommon for

10

multiple law suits to arise from a set of circumstances or contracts, and we will not adopt a rule that suggests that any related suits that are not filed simultaneously give rise to an inference of a retaliatory motive. More is needed to show the kind of retaliatory motive that could arguably support an award of attorney's fees.

Our review of the record reveals no other evidence of bad faith, fraud, or malice on the part of AND 1. Though Plaintiffs ultimately failed to carry their burden of persuasion in this action, their claims were at least colorable. Gittens points to AND 1's opposition to the consolidation of his suit with this action as evidence of bad faith. However, since the district court denied the motion to consolidate, we must conclude that AND 1's opposition had some basis in law and fact.[9]

Because the record fails to establish that AND 1 engaged in "culpable conduct" and because we find no "exceptional circumstances," the award of fees was an improper use of the district court's discretion. *Green*, 486 F.3d at 103. We will therefore reverse the award of fees.

## II. Conclusion

For the foregoing reasons, we affirm the district court's entry of judgment for

---

[9] *See* Fed. R. Civ. P. 42(a) ("When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.").

Gittens on all claims brought by Plaintiffs, but reverse the award of attorney's fees to

Gittens.