SECURACOMM CONSULTING, INC.,

v.

SECURACOM INCORPORATED, Ku-wam Corporation, Wirt D. Walker, III, Defendants/Third-party, Plaintiffs,

v.

Ronald S. Libengood, Third-party, Defendant.

Securacom Incorporated,

v.

Ronald S. Libengood, Clifford J. Ingber,

Securacom Incorporated, KuwAm Corporation, Wirt D. Walker, III, Appellants.

Nos. 95–5393, 96–3247 and 99–5326.

United States Court of Appeals, Third Circuit.

Argued Feb. 8, 2000.

Filed Aug. 21, 2000.

274

Arthur E. Newbold, (Argued), Michael Doluisio, Dechert, Price & Rhoads, Philadelphia, PA, Attorneys for Appellants.

Robert B. Golden, (Argued), Howard N. Aronson, Lackenbach, Siegel, Marzullo, Aronson & Greenspan, Scarsdale, NY, Attorneys for Appellees.

Before: SLOVITER, SCIRICA, and McKEE, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal marks the second time the remedial portion of this trademark case has come before us. In the first appeal, defendants Securacom Incorporated, Kuw–Am Corporation, and Wirt D. Walker, III (collectively "Securacom New Jersey") sought reversal of the District Court's award of profits, treble damages, and attorney's fees after the court found that Securacom New Jersey had willfully infringed the trademark of SecuraComm Consulting, Inc. We reversed the award of profits and treble damages on the ground that the record did not support a finding of willful infringement and remanded as to the award of attorney's fees. *See Secura-Comm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182 (3d Cir.1999) ("*SecuraComm Consulting I*").

On remand, the District Court again awarded attorney's fees and denied Securacom New Jersey's motion for the judge's recusal. Securacom New Jersey appeals. It argues primarily that the District Court erred in awarding fees under § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), which authorizes an award of fees to the prevailing party only in "exceptional cases."

### I.

The underlying trademark dispute involved the adoption by two security systems consulting firms of similar marks, the mark "SecuraComm" by plaintiff Secura-Comm Consulting (who with its principal Ronald Libengood will be referred to as "SecuraComm Pennsylvania") and the mark "Securacom" by defendant Securacom New Jersey. The detailed facts of the case are set forth in our previous opinion, *SecuraComm Consulting I*, and we restate them here only insofar as they are relevant to the narrow issues presented in this appeal.

In 1980, Ronald Libengood started a small security systems consulting business

called SecuraComm Associates after losing his job in the Westinghouse corporate security department to down–sizing. After the business lost Westinghouse as its principal client in 1992, Libengood incorporated the firm as SecuraComm Consulting, Inc., and expanded its range of services and client base. Notwithstanding its expansion after incorporation, SecuraComm Pennsylvania remained a relatively small company, with average annual revenues between 1992 and 1996 of slightly more than $250,000 per year.

In 1993, Libengood applied for registration of "Securacomm" as a service mark for security communication consulting and systems engineering; the mark was registered on the principal register on May 20, 1997. Plaintiff is licensed by Libengood to use the mark.

Defendant Securacom New Jersey, the other firm in the dispute, is the successor of a firm formed by Sebastian Cassetta in 1987. The firm affiliated with the engineering firm Burns & Roe, and operated under the name Burns & Roe Securacom. Burns & Roe Securacom's business was confined primarily to the nuclear security field.

Libengood first became aware of Burns & Roe Securacom in 1987 at a trade conference where he saw Cassetta throw a business card bearing the name "Burns & Roe Securacom" into a fish bowl. Libengood promptly approached Cassetta about the use of the name. Cassetta told him that he knew about Libengood's firm but that his attorneys had informed him that the similarity in the companies' names would not cause problems. Cassetta noted that the "Securacom" in his company name was preceded by "Burns & Roe" and that the two companies, SecuraComm Consulting and Burns & Roe Securacom, served different clienteles. As a result of the conversation, Libengood took no action.

In 1992, Burns & Roe Securacom hired Ronald Thomas as its chief executive officer, and terminated Cassetta's employment within two days. The company soon became independent of Burns & Roe after it received a substantial investment from KuwAm Corporation, a venture capital firm of which Wirt D. Walker, III is a shareholder and officer. The new, independent company expanded its activities into the full range of security services and changed its name to Securacom Incorporated.

In January 1993, Libengood learned that Burns & Roe Securacom had changed its name to Securacom Incorporated and had expanded its range of security services. Shortly thereafter, he mailed a cease-and-desist letter to Securacom New Jersey. For the next two and a half years, Libengood and Thomas attempted to settle the dispute. Libengood met with Thomas on two occasions and exchanged correspondence in which Libengood maintained his ownership of the mark, but stated that although he was not interested in selling his business, he would be willing to change his name if Securacom New Jersey were willing to pay for it. In fact, Libengood hired an appraiser in November 1994 who valued the SecuraComm Pennsylvania mark, together with the cost of changing its name, at $275,000.00. Libengood provided the appraisal to Thomas in May 1995.

In June 1995, Libengood informed Thomas that, as he had received no response concerning his offer to sell the SecuraComm Pennsylvania mark, he would institute legal proceedings after 30 days. Some time later, Thomas informed Libengood that he would have to deal with Walker, the chairman of the board of Securacom New Jersey. When Libengood spoke with Walker, Walker became abusive and told Libengood that if he filed suit, Walker would bury him financially and take everything he had.

On October 19, 1995, Libengood filed suit against Securacom New Jersey (later amended to add as defendants KuwAm Corporation and Walker) alleging, *inter alia*, service mark infringement and false

designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). On October 27, the Board of Directors of Securacom New Jersey signed a document stating that Libengood's suit was meritless and that Libengood had attempted to "extort" a payment of $250,000 by threatening to file a lawsuit. The document resolved that Securacom New Jersey's attorneys would be "instructed" to take the following action:

1) to vigorously defend the Corporation's position and seek summary judgment and Rule 11 sanctions against the plaintiff and Mr. Libengood's attorneys;

2) to file a lawsuit against the plaintiff and his attorneys for attempted extortion, business interference and interruption, malicious prosecution, scheming and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations, Racketeer Influenced and Corrupt Organizations Act (RICO) violations, usurpation of corporate opportunity, malicious and tortious interference with contractual rights and expectancy of economic advantage, breach of the covenant of good faith and fair dealing, and anything else the attorneys would deem appropriate; and

3) to file complaints with the American Bar Association, the New Jersey Bar Association and the New York Bar Association bringing to their attention the unethical behavior of the plaintiff's attorneys regarding their mischaracterization of the plaintiff's name in court documents as well as their complete lack of due diligence prior to the filing of this lawsuit on their client's behalf.

App. at 446–47.

On November 13, 1995, Securacom New Jersey filed an answer, defenses and counterclaims, including the same four claims that SecuraComm Pennsylvania had asserted, plus a fifth claim for libel, and also filed a third-party complaint against Libengood. By letter dated November 16, 1995, Walker informed Securacom New Jersey's attorneys of the instructions of the Board.

Thereafter, in accordance with Walker's letter and the Board's instructions, the attorneys for Securacom New Jersey filed a separate suit against Libengood and his attorney in Superior Court of New Jersey charging them with attempted extortion, business interference and interruption, malicious prosecution, scheming and artifice to defraud and to obtain money by means of false and fraudulent pretenses and misrepresentations, and RICO violations. As a result of his being named in the case, Libengood's attorney concluded that he could no longer represent SecuraComm Pennsylvania and Libengood in the Lanham Act case. The state suit was ultimately removed to federal court, consolidated with the existing Lanham Act action, and dismissed as meritless.

Securacom New Jersey subsequently filed a petition to cancel Libengood's trademark with the Patent and Trademark Office, seeking the same relief that it sought in its counterclaims in this case. Further, in June 1997 Securacom New Jersey filed another action in the District of Columbia Superior Court, alleging service mark infringement. The action was removed to the District Court of the District of Columbia. The District Court in this case enjoined Securacom New Jersey from proceeding with that action pending this trial.

The case was tried before the District Court in a bench trial in October 1997. After considering evidence from both sides, including extensive testimony from the parties, the court found that the facts "conclusively establish Libengood's ownership" of the name "Securacomm." *Securacomm Consulting, Inc. v. Securacom Inc.*, 984 F.Supp. 286, 298 (D.N.J.1997). It also found that confusion was likely and concluded that Securacom New Jersey had infringed the valid trademark of SecuraComm Pennsylvania. The court enjoined Securacom New Jersey's use of the word

"Securacom" throughout the United States and Puerto Rico. Further, although it did not enter an amount of compensatory damages on the ground the damages could not "be measured with reasonable precision," *id.* at 303, the court awarded SecuraComm Pennsylvania ten percent of Securacom New Jersey's profits. It trebled that amount based on the "egregious circumstances" of the case and awarded attorney's fees to SecuraComm Pennsylvania in the amount of $233,600.26. *Id.* at 302–04.

Securacom New Jersey appealed, posting a supersedeas bond to secure a stay of the District Court's decision pending appeal. Although Securacom New Jersey did not challenge the District Court's finding of infringement or its issuance of an injunction, it contested the District Court's finding that the infringement was willful and the award of profits, treble damages, and attorney's fees under the Lanham Act.

We reversed the award of damages on the ground that the record did not support a finding of willful infringement. See *SecuraComm Consulting I*, 166 F.3d at 189. We explained there was no evidence in the record from which it could reasonably be inferred that Securacom New Jersey knew about SecuraComm Pennsylvania prior to the cease-and-desist letter sent by Libengood. We remanded as to the attorney's fees, stating:

> Since the District Court's finding of willful infringement appears to be a substantial basis for the award of attorneys' fees, we are required to reverse and remand on the issue of whether exceptional circumstances, other than willful infringement, exist warranting an attorneys' fees award.

*Id.* at 190.

On January 27, 1999, Securacom New Jersey sought *ex parte* an order from the District Court authorizing release of the supersedeas bond that it had posted pending appeal. The District Court requested that Securacom New Jersey seek the consent of SecuraComm Pennsylvania and submit a consent order to that effect.

When SecuraComm Pennsylvania refused to agree to a consent order, the District Court set a briefing schedule for the matter and a hearing date of March 8, 1999. On February 8, Securacom New Jersey informed the District Court that the bonding company had released the assets it was holding as security and therefore that the application for an order releasing the bond was moot.

On February 26, 1999, Securacom New Jersey filed a motion requesting that the presiding District Judge, Dickinson R. Debevoise, recuse himself under 28 U.S.C. § 455(a) and requesting that the motion be decided before the remanded attorney's fee motion. Judge Debevoise advised the parties that both the recusal motion and the attorney's fees motion would be argued on March 22, 1999, and that if the recusal motion was granted, the attorney's fees matter would be assigned to another judge. On March 22, 1999, after hearing argument on the recusal motion, Judge Debevoise denied the motion orally. On April 12, 1999, a written opinion to that effect was filed.

Also on April 12, 1999, the court awarded SecuraComm Pennsylvania attorney's fees in the amount of $233,600.26 pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117(a). The court determined that this was an "exceptional case[ ]" warranting fees under § 35 based on its finding that Securacom New Jersey "sought to secure use of the trademark Securacom not simply through fair and vigorous use of the legal process ... [but] by first engaging in bad faith negotiations and then seeking to destroy a financially weaker adversary through oppressive litigation tactics." *SecuraComm Consulting, Inc. v. Securacom Inc.*, No. 95–5393, slip op. at 5 (D.N.J. Apr. 12, 1999) (hereafter "slip op.").

Securacom New Jersey now appeals the order of the District Court denying its recusal motion and the order granting SecuraComm Pennsylvania's fee motion. We have jurisdiction over the final orders of

the District Court pursuant to 28 U.S.C. § 1291.

## II.

## A.

### Denial of the Motion to Recuse

■ We need not spend long disposing of Securacom New Jersey's challenge to the District Court's denial of its recusal motion, which we review for abuse of discretion. *See Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 265 (3d Cir. 1995). A judge is required to recuse where his or her impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). Under the extra-judicial source doctrine, however, alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal. *See United States v. Antar*, 53 F.3d 568, 574 (3d Cir.1995). As the Supreme Court has stated:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

■ Securacom New Jersey's articulated bases for recusal all stem from the judicial proceedings in this case. First, Securacom New Jersey asserts that Judge Debevoise's questioning of Walker during trial about Walker's knowledge of the federal RICO statute and his instructions to his attorney to file a RICO claim against Libengood and Libengood's attorney, together with the "negative comments" about Walker in the judge's written opinion, required recusal. Second, Securacom New Jersey asserts that Judge Debevoise's decision to schedule Securacom New Jersey's *ex parte* motion for release of the supersedeas bond for a hearing exhibited partiality.

We conclude without hesitation that none of these purported bases for recusal manifest the type of deep-seated bias that would render fair judgment impossible. Not only was Judge Debevoise's questioning at trial relevant to Walker's credibility and to the factual issue of whether Securacom New Jersey acted in bad faith by filing multiple suits and complaints, Judge Debevoise's "negative comments" made about Walker in the written opinion were factual findings relevant to the court's award of damages and attorney's fees.

Nor do we see any ground to find partiality in the District Court's setting a hearing concerning the release of the supersedeas bond. After all, it was Securacom New Jersey who had filed the request *ex parte*, and it was hardly inappropriate to give the opposing party an opportunity to be heard.

We have repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for recusal, *see, e.g., In re TMI Litig.*, 193 F.3d 613, 728 (3d Cir.1999); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir.1990), and we reiterate that principle here. After extensive review of the record, we find no evidence of bias in the findings or actions of Judge Debevoise that might warrant recusal and thus we find no abuse of discretion in his denial of the motion to recuse. To the contrary, we conclude that the record fully supports the District Court's decision to deny recusal.

## B.

### The Fee Award

Section 35(a) of the Lanham Act, which lists the remedies available for trademark violations, provides in pertinent part that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Securacom New Jersey does not contest that SecuraComm Pennsylvania was the prevailing party and, as we have already noted, it did not challenge the District Court's finding of infringement or the order of injunctive relief on the first appeal. Its principal contention here is that this case is not an exceptional case for which attorney's fees are authorized and that the District Court erred in finding that it was.

■ We review the District Court's determination that this is an exceptional case for abuse of discretion, "unless, of course, the district court applied the wrong standard, which would be an error of law." *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 48 (3d Cir.1991). Accordingly, our review of the scope and meaning of the term "exceptional" as used in § 35(a) is plenary, but our ultimate review of the District Court's award is for abuse of discretion. *See id.* at 49 (concluding that the district court based its finding of exceptionality on an erroneous legal standard, identifying no culpable conduct on the part of the defendant, and thus that the award of attorney's fees was not a sound exercise of discretion); *see also Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir.1997) (abuse of discretion standard for review of denial of attorney's fees under § 35(a), but de novo review of the district court's interpretation of the Lanham Act).

■ It is Securacom New Jersey's position that only a case involving willful infringement can be an exceptional case. It argues that the District Court erred in awarding fees because any culpable conduct on the part of Securacom New Jersey involved stalling and litigation tactics rather than willful infringement of the Securacom mark. We reject this position as assuming too limited a reading of the statute and as intruding into the broad discretion granted to the district courts by Congress.

We begin with our prior decision in this case, for it is of some significance that in *SecuraComm Consulting I* we remanded the issue of attorney's fees for further consideration after finding that there was no knowing or willful infringement by Securacom New Jersey. If we had believed that willful infringement by a defendant was the exclusive basis for finding a case to be exceptional under § 35(a), there would have been no reason for us to have remanded for a decision on attorney's fees. In contrast, we did not remand on the award of profits or treble damages because we held that those remedies are dependent on a finding of willful infringement. In fact, in remanding, we expressly left for the District Court the determination of whether "exceptional circumstances, *other than willful infringement*, exist warranting an attorneys' fees award." *SecuraComm Consulting I*, 166 F.3d at 190 (emphasis added). The necessary premise of our remand was a determination that the District Court could find this to be an exceptional case warranting an award of fees under § 35(a) even absent willful infringement. Nonetheless, because we did not give the issue extensive treatment in our prior decision, we do so here.

Congress added the attorney's fee provision of § 35(a) to the Lanham Act in 1975 in response to the Supreme Court's decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), holding that attorney's fees were not available in trademark cases under the Lanham Act absent express statutory authority. *See* S. Rep. No. 93–1400, at 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133. Although the statute now expressly provides for an award of attorney's fees at the discretion of the court in "exceptional cases," 15

U.S.C. § 1117(a), it does not define an "exceptional case[ ]."

In *Ferrero*, we held that an exceptional case under § 35(a) must involve culpable conduct on the part of the losing party. *See* 952 F.2d at 47.[1] We were persuaded by the cases in other circuits holding that "a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.' " *Id.* The district court in *Ferrero* had not articulated any basis for its conclusion that the case was an exceptional one, and our examination led us to conclude that it was not. One of the factors we emphasized was that it was a case in which defendant had imported gray market goods which legitimately bore the trademark of plaintiff's foreign affiliate. We found that at the time the importation began, the legality of importation of gray goods was unsettled. *Id.* at 49. We concluded that the district court had relied on an erroneous legal standard in finding exceptionality, and we reversed the award of fees.

We did not hold in *Ferrero*, as Securacom New Jersey asserts, that willful infringement is the only culpable conduct by a defendant that renders a case exceptional. On the contrary, by explicitly referring to "bad faith," "fraud," or "malice" as other examples of culpable conduct that might warrant a finding of exceptionality, *id.* at 47, we recognized that culpable conduct comes in a variety of forms and may vary depending on the circumstances of a particular case. For example, the fact that typically many "attorneys' fee cases involve deliberate attempts by the defendant to pass off its goods as those of the plaintiff by applying plaintiff's trademark to defendant's goods," *id.* at 48–49, does not mean that a successful plaintiff whose

claim is based on another form of infringement will necessarily be precluded from receiving attorney's fees. In other words, culpable conduct may be broader than willful infringement.

Securacom New Jersey next argues that in this case the District Court's finding of the defendant's culpable conduct was not centered on the infringing use but on its litigation conduct. Although culpability is often based on the infringing acts, we have not suggested that that was the only conduct that would qualify as exceptional enough to warrant a fee award. In cases in which the defendant is the prevailing party in a trademark infringement case and seeks fees from the plaintiff, the plaintiff's culpable conduct will necessarily center on the act of filing the lawsuit rather than on the infringement. *See, e.g., Gamla Enters. North America, Inc. v. Lunor-Brillen Design U. Vertriebs GmbH*, 2000 WL 193120 (S.D.N.Y.2000). Yet the language of § 35(a) authorizing attorney's fees to the prevailing party in the discretion of the court is the same for defendants as well as plaintiffs. It does not preclude using litigating conduct as a basis for the fee.

Nor does the legislative history of the Lanham Act fee provision support the restrictive view that Securacom New Jersey takes of its scope. Although the Senate Report states that "[Attorney's fees] should be available in exceptional cases, i.e., in infringement cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful,' " S. Rep. No. 93–1400, at 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133, the report further explains:

> [The attorney's fee provision] provides that attorney fees may be awarded to the prevailing party in actions under the

---

1. In doing so, we adopted an evenhanded approach to the degree of culpability required to justify a fee award to a prevailing plaintiff or defendant under the Lanham Act. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court rejected the dual standard as applied under the Copyright Act, noting in comparison that "the federal fee-shifting statutes in the patent and trademark fields … support a party-neutral approach," *id.* at 525 n. 12, 114 S.Ct. 1023.

federal trademark laws, *when equitable considerations justify such awards*. It would make a trademark owner's remedy complete in enforcing his mark against willful infringers, and would give defendants a remedy against unfounded suits.

S. Rep. No. 93–1400, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7137 (emphasis added).

Securacom New Jersey relies on the Report's reference to "willful infringers" to argue that a defendant's vexatious litigation conduct is not included in the definition of an exceptional case. As the first sentence of the same passage reaffirms, whether a case qualifies as exceptional ultimately turns on consideration of the equities in full. In fact, the Senate Report states the purpose of the fee provision as "authoriz[ing] award of attorney fees to the prevailing party in trademark litigation *where justified by equitable considerations*." S. Rep. No. 93–1400, at 1 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7132 (emphasis added).

By using the term "equitable considerations," we think it clear that Congress intended to invoke the tradition of equity, a hallmark of which is the ability to assess the totality of the circumstances in each case. Accordingly, although culpable conduct of a defendant in the act of infringement is a relevant factor to consider, it is not exclusive of other equitable considerations.

Our interpretation of the fee provision of the Lanham Act is buttressed by the interpretation by the Court of Appeals for the Federal Circuit of an identical fee provision in the Patent Act, 35 U.S.C. § 285. In amending § 35(a) of the Lanham Act to include an express fee provision, Congress referenced the fee provisions in both the patent and copyright statutes. *See* S. Rep. No. 93–1400, at 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133. The copyright statute does not include a requirement that a case be exceptional to permit an award of fees, *see* 17 U.S.C. § 505, and we

have accordingly held that a finding of bad faith is not a prerequisite to an award of fees under that act. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986). However, the language of the patent statute, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party," 35 U.S.C. § 285, is identical to that of the Lanham Act fee provision. We, therefore, look to the interpretation of the patent statute for guidance. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir.1992) (inferring from parallel language in the fee provisions of the Patent Act and Lanham Act that Congress meant for similar standards to apply).

An exceptional case under the Patent Act fee provision has been interpreted to include vexatious litigation conduct on the part of the defendant even when the act of infringement itself was not willful. *See, e.g., Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed.Cir.1992) ("[L]itigation misconduct may in itself make a case 'exceptional.' "), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed.Cir.1990) ("[T]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation."); *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed.Cir.1986) ("[B]ad-faith displayed in pretrial and trial stages, by counsel or party, may render the case exceptional under § 285.").

For example, in *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551–52 (Fed.Cir.1989), the court affirmed an award of fees to a plaintiff under the patent fee provision, despite a finding that there was no willful infringement by the defendant, based on the defendant infringer's vexatious litigation strategy. The litigation conduct included filing and dropping defenses and claims, pleaded defenses of only marginal relevance, and various

discovery and trial abuses. As the court explained:

> Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit.

*Id.* at 1551 (citations omitted). Those cases under the patent statute fee provision confirm our conclusion that § 35(a) of the Lanham Act permits a district court to find a case exceptional based on a defendant's culpable conduct other than willful infringement.

■ Applying the Lanham Act fee provision to the case at hand, we see no abuse of discretion in the District Court's finding that this case was exceptional. The case involved a deliberate effort by Securacom New Jersey to "bury" Libengood financially and "take everything he had" by filing multiple suits and complaints against him and his attorneys in a variety of legal fora. Slip op. at 6. As the District Court found, based on documents and testimony presented at trial, Securacom New Jersey "did not confine itself to litigating the case fairly on the merits. Rather, it tried to prevail by crushing Libengood and his corporation." Slip op. at 5. The facts of this case support the District Court's conclusion that this is an exceptional case involving culpable conduct on the part of Securacom New Jersey.[2]

Securacom New Jersey nonetheless maintains that the District Court abused its discretion in finding this case exceptional because there were other avenues, such as Federal Rule of Civil Procedure 11, through which the court could have sanctioned improper litigation behavior. It argues that because the District Court considered Rule 11 sanctions on several occasions, denied SecuraComm Pennsylvania's request for fees under Rule 11 in connection with the separate action brought by Securacom New Jersey against Libengood and his attorney, and granted SecuraComm Pennsylvania's motion to preclude introduction of evidence at trial of 90 contracts that had not been disclosed during discovery, the District Court overstepped its discretion in awarding fees under § 35(a).

Contrary to Securacom New Jersey's assertions, however, the District Court's use of an alternate tool to sanction Securacom New Jersey for its abuses of the discovery process does nothing to detract from the exceptional nature of the litigation tactics taken by Securacom New Jersey outside of the discovery process. Moreover, we see no inconsistency with the District Court's decision to deny Rule 11 sanctions in dismissing an action filed by Securacom New Jersey but to award fees in the Lanham Act case after making a factual finding concerning the culpable conduct involved in the case as a whole. Although the availability of alternate sanctioning tools may factor into the district court's decision whether to award fees under § 35(a) in a particular case, it does not bar an award of fees under the Act.[3] *See Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 786 (2d Cir.1988) (rejecting contention that availability of other sanctioning tools, such as Rule 11 and 28 U.S.C. § 1928, renders unnecessary a discussion of § 35(a)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 504–05 (3d Cir.1991) (considering fee-shifting provision of Title VII and, alternatively, the possibility of fee-shifting under Rule 11 and the district court's inherent authority).

Like the Copyright Act fee provision, which we considered in our decision in

---

2. Because we find that Securacom New Jersey's vexatious litigation conduct is sufficient to support the District Court's determination that this is an exceptional case, we do not reach the District Court's additional finding of bad faith in settlement negotiations.

3. Securacom New Jersey does not challenge in its brief the reasonableness of the amount of the fee calculated, and although it alluded to that issue at oral argument before us, we will not entertain such a challenge at this late date.

*Lieb,* 788 F.2d at 158, the Lanham Act fee provision is distinct from Rule 11 as a basis for fees in part because it "looks to the whole of the case" rather than to small segments of the litigation. As we discussed above, this case presents more than isolated incidents of litigation abuse; it involves a sweeping attempt to beat a financially weaker opponent through the use of vexatious litigation. Because we see no abuse of discretion in the District Court's determination that this case is exceptional under § 35(a), we will affirm the court's award of fees on that ground.

### III.

For the reasons set forth, we will affirm the order of the District Court denying the Appellants' motion to recuse and the order of the District Court awarding attorney's fees.