

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2008

# Warren v. Comm of PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3011

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Warren v. Comm of PA" (2008). *2008 Decisions.* Paper 673.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/673

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3011
_____

DANIEL K. WARREN,

Appellant

v.

COMMONWEALTH OF PENNSYLVANIA; DEPARTMENT OF CORRECTIONS;
STATE CORECTIONAL INSTITUTE CAMP HILL, also known as S.C.I. Camp Hill;
STATE CORRECTIONAL INSTITUTE GREENE, a corporation(s) sole acting
through its beneficiary members, also known as SCI Greene;
JEFFREY A. BEARD; SHARON M. BURKS; LOUIS S. FOLINO;
DAN DAVIS; DAVID GRAINEY, Each in their private capacity, individually
and severally, the martial community and any bond(s) or sureties under which they
may perform duties in the name(s) of their several corporate dba(s)

_____

On Appeal from the United States District Court
for the Western  District of Pennsylvania
(D.C. Civil Action No. 06-00504)
District Judge:  Honorable Nora Barry Fischer

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
FEBRUARY 12, 2008

Before:    MCKEE, SMITH AND CHAGARES, <u>CIRCUIT JUDGES</u>.

(Opinion filed: August 12, 2008)

_____

OPINION

_____

PER CURIAM

Daniel King Warren, Jr., a pro se prisoner, sued the Commonwealth of

Pennsylvania, its Department of Corrections ("DOC"), two state prisons, and five

officials and employees of the state prison system.[1]  Although his complaint, its

amendment, and his lengthy "narrative written statement" are not models of clarity, they

include federal statutory and constitutional claims within their hundreds of pages.

Ostensibly through 42 U.S.C. § 1983, Warren raised challenges under the Due Process

Clause of the Fourteenth Amendment and the First and Fourteenth Amendments to the

removal of 57 books, including the Koran and other religious books, and publications and

papers, including materials relating to the Uniform Commercial Code ("UCC"), from his

cell on August 12, 2005, and to the confiscation of two books from the mail on September

6, 2005.  He generally contended that the policy limiting inmates to 10 books each (DC-

ADM 803(VI)(F)(6)(a)(3)) and the policy restricting the possession of UCC materials

(DC-ADM 803(VI)(D)(1)(g)) were unconstitutional.  Furthermore, he claimed that DC-

_____

[1]Soon after Warren filed his complaint, he voluntarily dismissed the Commonwealth,
the DOC, and the two prisons from the suit, leaving Jeffrey Beard, the DOC Secretary,
Sharon Burks, the Chief Grievance Officer for the DOC, Louis Folino, the
Superintendent of SCI–Greene, Dan Davis, the SCI–Greene Grievance Coordinator, and
David Grainey, the SCI–Greene Restricted Housing Unit Captain.

ADM 803(VI)(F)(6)(a)(3) and its application to him violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq..

Warren also alleged that Defendants retaliated against him for "possessing the law" and filing grievances and a civil action against them. He asserted that he was issued misconducts based on fabricated infractions or for no apparent reason. Additionally, Warren claimed that Defendants have engaged in a pattern and practice of criminal racketeering; violated their oaths of office; exercised authority beyond that permitted by Article I, § 8, clause 17 of the United States Constitution; usurped authority in violation of the Ninth and Tenth Amendments; made law in violation of Article I, § 1 of the Constitution; deprived him of a republican form of government; and violated the Privileges and Immunities Clause of the United States Constitution (Article IV, § 2, clause 1).

Defendants filed a motion for summary judgment, arguing Warren had failed to exhaust his administrative remedies and had procedurally defaulted most of his claims. Defendants conceded that Warren had exhausted two grievances during his stay in prison. In one, grievance number 139440, he complained that the prison mail room held a book addressed to him because it had a compact disc ("CD") attached to it. In the other, grievance number 135550, Warren objected to the seizure of books from his cell. Nonetheless, Defendants argued that any related claims raised in the complaint were not properly exhausted because Defendants were not named in the grievance or during the

3

administrative appeal process. Defendants additionally argued that Warren suffered no due process violation from the removal of books from his cell because he had a post-deprivation remedy and no impingement of his First Amendment right by the 10-book policy under the test of Turner v. Safley, 482 U.S. 78, 84-85 (1987), especially because Warren refused to choose which books to keep and did not file a religious accommodation request to keep additional religious books. Defendants also argued that Turner and Warren's failure to show actual injury from the restriction on UCC materials doomed his claim related to DC-ADM 803(VI)(D)(1)(g), and that Warren's retaliation and various other claims failed on the merits and because of Warren's failure to allege Defendants' personal involvement.

In response, Warren conceded that he did not always use the prison grievance system and argued that his efforts in filing a complaint in federal court satisfied the exhaustion requirement. He also sought to evade the exhaustion requirement by arguing that his complaint was not filed pursuant to 42 U.S.C. § 1983. Warren additionally argued that mere statements in a motion are not alone a sufficient basis for summary judgment and that the statements in Defendants' motion must be disregarded because the motion was filed by counsel who could not legally represent Defendants. Warren also moved for summary judgment because Defendants had not filed a pre-trial statement.

A Magistrate Judge, to whom the case had been referred, concluded that only those claims raised in the grievances could be reviewed. Based on the prison officials'

4

response to Warren's grievance about the removal of books from his cell and the 10-book limit, the Magistrate Judge determined that Warren's as-applied challenge to the prison policies was without merit because he had refused to select which books he wanted to keep in his cell. The Magistrate Judge also concluded that the policies passed constitutional muster under the Turner test as it was interpreted in Beard v. Banks, 126 S. Ct. 2572 (2006), based on the reasons for the policies that Defendants offered. The Magistrate Judge rejected the claim about the due process deprivation relating to the withholding of the book and CD. Based on the record and Warren's response to Defendants' motion, the Magistrate Judge concluded that there was no genuine issue of material fact and recommended granting Defendants' motion. The Magistrate Judge also determined that Warren's motion for summary judgment should be denied.

Warren filed objections, challenging the Magistrate Judge's jurisdiction to file a recommended disposition of his case and the recommended outcome. In a short order, the District Court rejected Warren's objections, dismissed Warren's motion for summary judgment as moot, and granted Defendants' motion for summary judgment. Warren appeals from the District Court's order and the resulting judgment in Defendants' favor, as well as the decisions denying his motion to recuse the Magistrate Judge and his motions for sanctions and for attorney's fees. He argues that Defendants Beard and Banks should have been deemed to have made the admissions he requested when they did not respond to his request. Additionally, Warren contends that the District Court never

had jurisdiction over his case, "usurped powers," "committed fraud on the court," and generally abused its discretion by barring Warren from a remedy for the alleged wrongs he suffered.

Warren at once (and at length) challenges the jurisdiction of the District Court and seeks relief on the merits. However, it is clear that the District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.[2] We have jurisdiction over this case under 28 U.S.C. § 1291.

As a preliminary matter, we consider Warren's challenges to the orders denying his motion for the Magistrate Judge to recuse, his motion for sanctions, and his motion for attorney's fees. We hold that the Magistrate Judge was not obliged to recuse from Warren's case. It was no abuse of discretion to refuse to recuse where Warren's only argument for recusal was (and continues to be) his dissatisfaction with rulings on his motions in the District Court. See SecuraComm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000). There was no abuse of discretion in denying Warren's motion for the sanction of attorney's fees for an alleged discovery violation and his related motion for attorney's fees because Warren, proceeding pro se, did not engage an attorney. Cf. Owens-El v. Robinson, 694 F.2d 941 (3d Cir. 1982).

We exercise plenary review over the District Court's rulings on the summary

---

[2]To the extent that Warren challenges the jurisdiction of the Magistrate Judge, we reject his complaints about a perfectly ordinary referral. See 28 U.S.C. § 636; Fed. R. Civ. P. 72.

6

judgment motions. See Abramson v. William Patterson College, 260 F.3d 265, 276 (3d Cir. 2001). The District Court properly denied Warren's motion for summary judgment. His basis for summary judgment – Defendants' failure to file a pre-trial statement – did not satisfy the standard for summary judgment by demonstrating the absence of a genuine issue of material fact. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In any event, Defendants filed a motion for summary judgment in lieu of filing a pre-trial brief.

The District Court also properly declined to entertain most of Warren's claims on the merits. A prisoner who challenges prison conditions must exhaust available administrative remedies before filing suit in federal court. See 42 U.S.C. § 1997e; Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006); Booth v. Churner, 532 U.S. 731, 739 (2001). Defendants put forth evidence that Warren did not exhaust his administrative remedies for most of his claims. Defendants' Motion for Summary Judgment, Exhibits D, E, F, H, & I. Warren did not dispute Defendants' evidence. For some claims, he filed no grievance at all; for others, he did not file a final administrative appeal or otherwise comply with the pertinent prison directive, DC-ADM 804.[3] Defendants' Motion for Summary Judgment, Exhibit F.

Defendants concede that Warren exhausted two grievances, grievance numbers

---

[3]To exhaust a grievance through the procedures of DC-ADM 804, a prisoner files a grievance with the grievance coordinator within 15 days of the complained-of incident, appeals to the facility manager within five days of any initial decision, and appeals the facility manager's decision to the DOC Secretary's Office of Inmate Grievances and Appeals.

7

135550 and 139440. Appellees' Brief 13. The District Court considered the claims raised in grievance number 139440, relating to a complaint that in December 2005 the prison mail room held a book addressed to him because a CD was attached to it. Warren's pleadings are difficult to decipher; however, we conclude that Warren did not raise those claims in the District Court. In any event, Warren had a post-deprivation remedy and ultimately received the resolution he proposed to prison officials – his book was delivered to him and he was given the option of shipping out the free CD.

In grievance number 135550, Warren contended that the DOC policy limiting him to 10 books imposed a substantial burden on his religious exercise. Specifically, he asserted that he needed more than 10 books to practice Islam. In addition to the Koran, he needed books to learn how to pray, purify, fast, and perform other religious rituals and to better understand Allah. Warren noted that he was without any books, as all were being held by the prison. He cited and tried to apply RLUIPA and the First Amendment to his claims and requested an exception to the prison's policy. He pointed to the prison's exception to the 10-book limit for books for educational purposes.

At first, Defendant Davis rejected Warren's grievance, ruling that the grievance did not indicate that Warren was personally affected by a facility action or policy. Warren appealed to Defendant Folino, explaining that he had taken issue with a substantial burden on the exercise of his religion and repeating his arguments. Defendant Folino permitted Warren's grievance to go forward. Defendant Grainey then denied

Warren's grievance. He stated that Warren had been given an opportunity to choose which books to keep and had refused to do so. He also suggested that Warren use the option of filing a DC-52 Religious Accommodation Request to possess more than 10 religious books. Warren appealed, reiterating that every religious book he owned was confiscated and that he needed more than 10 books to properly practice his religion. He noted that he was told that he had to ship out all of his books or have them destroyed. Warren maintained that the prison's policy violated the First, Eighth, and Fourteenth Amendments as well as RLUIPA by impinging on the exercise of his religion. Defendant Folino denied Warren's appeal. Warren then sought relief through Defendant Beard's office. Defendant Burks upheld the denial of Warren's grievance. She concluded that Warren had failed to provide sufficient evidence that DOC staff was preventing him from having any religious books in his cell. Burks told Warren that his own actions were preventing him from having 10 books, including his Koran. She also repeated Defendant Grainey's advice for him to file a DC-52 Religious Accommodation Request.

Given the content of Warren's grievance and appeals and the substance of his complaint, we conclude that the claims before the District Court were that the 10-book limit, on its face and as applied to Warren, violated the First Amendment and RLUIPA.[4]

---

[4]Although the District Court rejected on the merits Warren's challenge to the prison restriction of UCC materials, we conclude the claim was unexhausted and procedurally defaulted and affirm this aspect of the judgment on these grounds. See Erie Telecomms. v. Erie, 853 F.2d 1084, 1089 (3d Cir. 1988) (holding that we may affirm on an alternative basis supported by the record).

9

Turner v. Safley, 482 U.S. 78 (1987), and Overton v. Bazzetta, 539 U.S. 126 (2003), outline the contours of a prisoner's First Amendment rights. See Beard, 126 S. Ct. at 2577 (plurality). While imprisonment does not deprive a prisoner of the First Amendment's protection, it sometimes permits a contraction of the rights afforded outside prison walls. See id. at 2577-78. "[R]estrictive prison regulations are permissible if they are 'reasonably related' to legitimate penological interests . . . and not an 'exaggerated response' to such objectives . . . ." Id. at 2578 (citations omitted). The inquiry is fourfold: (1) "[I]s there a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it?"; (2) "[A]re there 'alternative means of exercising the right that remain open to prison inmates?"; (3) "[W]hat impact will 'accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally?"; and (4) "[A]re 'ready alternatives' for furthering the governmental interest available?" Id. at 2578 (citations omitted). Our recent addition to RLUIPA jurisprudence informs the First Amendment analysis in this case.

For prisoners, RLUIPA heightens the protection from burdens on religious exercise. See Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007). RLUIPA does not differentiate between bona fide faiths or permit a court to determine whether the belief or practice in question is "'compelled by, or central to, a system of belief,'" or to inquire into the sincerity of a prisoner's beliefs. See id. In Washington, which was decided after the

10

District Court ruled on Warren's claims, we presented a primer on RLUIPA:

> Section 3 of RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). If the plaintiff "produces prima facie evidence to support a claim alleging a [RLUIPA] violation . . . the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice [or law] substantially burdens the plaintiff's exercise of religion." Id. § 2000cc-2(b).

Id. In that case, we also adopted a test to determine whether a substantial burden exists; it exists where "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and violate his beliefs." Id. at 279-280.

In Washington, we held that the 10-book limitation (the same policy that Warren challenges) substantially burdened the prisoner's religious exercise under the second part of the "substantial burden" test because it limited his ability to read four books each day, as the parties agreed he must do to practice his religion. 497 F.3d at 282-83. While we acknowledged that the DOC asserted a "valid interest" in preventing fire hazards and sanitation problems and disallowing places to conceal weapons or other contraband,[5] we

---

[5]In this case, Defendants provide essentially the same reasons for the policy.

concluded that the DOC had not shown how the 10-book limit furthered that interest. Id. at 284. Even assuming that the DOC showed that the policy served a compelling governmental interest, we concluded that the DOC had not shown that it was the least restrictive means available. Id. at 285 (calling the limitation arbitrary and noting exceptions and flexibility in the policy (including the more generous allowance for educational books that Warren cited) that undermine its "compelling" nature). We did not facially invalidate the policy, but held that its application to Washington had substantially burdened the exercise of his religious beliefs and the DOC had not shown the burden was the least restrictive means to further its safety and security interests. Id. at 286. (We remanded for a reassessment of the claim under the proper legal standard. Id.)

Although Defendants recognized that Warren presented RLUIPA claims, they did not address them on the merits in their motion for summary judgment.[6] They did not thoroughly address the Turner test, which demands a weighing of four factors to determine the reasonable relation of a regulation to penological objectives. However, they contended that the policy limiting books in cells facilitates cell searches, hinders the concealment of contraband, and promotes safety by preventing a fire hazard. Defendants' Motion for Summary Judgment, Exhibit J, ¶ 3. The District Court was obliged to

_____

[6]They argued instead that Warren had procedurally defaulted by not naming them during the grievance process, a contention they do not raise on appeal. However, Warren sued only those involved in enforcing the 10-book limit through the rejection of his grievance and administrative appeals. Cf. Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).

12

consider whether Defendants had established the absence of a genuine issue of material fact relating to Warren's First Amendment and RLUIPA claims before granting summary judgment. See Beard, 126 S. Ct. at 2578. However, the District Court, concluding that Defendants' assertions showed that the 10-book limit was "designed to accomplish legitimate penological security concerns" and invoking the summary judgment standard, did not engage in more than a summary analysis.

Although the District Court summarized the Turner precepts and weighed in on the first factor of the analysis, it did not undertake the test of overall reasonableness. We acknowledge the legitimacy of Defendants' interest in promoting prison safety and security. Cf. Washington, 497 F.3d at 284. While we have questioned whether the policy serves a compelling governmental interest, see id. at 284-86, our questioning does not foreclose the "'contextual, record-sensitive,'" see Wolf v. Ashcroft, 297 F.3d 305, 310 (3d Cir. 2002), consideration of a rational relationship between the policy and the interest. However, whether or not Washington influences the outcome, consideration of the relationship between the policy and the interest only commences the necessary First Amendment inquiry. See Wolf, 297 F.3d at 310. Furthermore, because of Defendants' less than thorough briefing and Warren's unfocused arguments, the record is not developed enough for us or the District Court to engage in the Turner analysis at present. Instead, we will vacate the judgment in favor of Defendants on Warren's First Amendment claims. See Wolf, 297 F.3d at 310 (providing guidance on how to undertake

13

the <u>Turner</u> analysis to a district court that recited the <u>Turner</u> factors without undertaking the necessary analysis).

We also will vacate the District Court's judgment in favor of Defendants on Warren's RLUIPA claims. At the very least, through the documents they relied on to support their motion for summary judgment, Defendants exposed genuine issues of material fact relating to the question of a substantial burden in the RLUIPA analysis. Similar to the position taken by the defendants in <u>Washington</u>, Defendants do not challenge Warren's repeated assertion that he needs more than 10 books to practice his religion. They instead argue that Warren contrived a scenario that implicated First Amendment concerns by refusing to select 10 books to keep and declining to fill out a religious accommodation request. Defendants' first contention does not abrogate the concern in this case. Even if Warren had sensibly chosen 10 books to keep, his religious practice would still be burdened because he purports to need more than 10 books; that is, he is without his eleventh book, his twelfth book, and so on. Similarly, even if a separate accommodation procedure may have lessened the impact of the book limitation policy – an assertion not established by the current record, which only details the availability of an avenue to request an accommodation – the policy's actual, historical impact on Warren is unchanged.

Also, on the current record, other genuine issues of material fact remain. For instance, as in <u>Washington</u>, it is unclear how the prison's safety and security interests are

14

furthered by the 10-book limit, and, even if the 10-book limit serves a compelling governmental interest, whether the policy is the least restrictive means available to further those interests. Cf. 497 F.3d at 284. It does not appear that the District Court, in its summary analysis, put the burden on Defendants, who did not even brief the issue, to show that the policy was the least restrictive means.

Given that the District Court did not have the benefit of thorough briefing or our decision in Washington, we will vacate its judgment in favor of Defendants on the First Amendment and RLUIPA claims. Otherwise, we will affirm the District Court's judgment. We will remand this matter to the District Court for further proceedings consistent with this opinion. On remand, the District Court may wish to inquire as to whether Warren would like to proceed in forma pauperis for the purpose of appointing counsel and to consider whether counsel should be appointed for him. See 28 U.S.C. § 1915(e)(1). Whether or not counsel is appointed, the District Court may wish to allow a period of further discovery, after which Defendants and Warren could be permitted to file renewed motions for summary judgment on the remaining claims.