NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2677
_____

WORLD ENTERTAINMENT INC;
CARMEN TOMASSETTI

v.

ANDREA BROWN; GRAND ENTERTAINMENT PRODUCTIONS, LLC;
JIM DI RENZO,

Andrea Brown; Grand Entertainment Productions LLC,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-5365)
District Judge: Honorable Norma L. Shapiro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 9, 2012

Before: FUENTES, HARDIMAN, and ROTH, *Circuit Judges*

(Opinion Filed: July 30, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

From 2001-2008, Andrea Brown was the lead singer of CTO Tribeca, one of

Plaintiff-Appellee World Entertainment, Inc.'s bands. Eventually, Brown left the

1

company and formed her own company and band. However, she continued to use World Entertainment, Inc.'s registered trademark "CTO." World Entertainment, Inc. and its president filed this action against Brown and her company, asserting myriad claims under federal and state law. Brown ignored service of the summons and complaint and failed to answer or otherwise appear before the District Court. After the appropriate amount of time, the District Court entered default against her. After a hearing as to damages, the District Court awarded World Entertainment $429,997. Brown appeals, and we will affirm.

## I.

Because we write primarily for the parties, we set forth only the facts relevant to our conclusion. World Entertainment, Inc. ("World") is a Philadelphia-based production company, specializing in weddings, bar/bat mitzvahs and other special events. Each of World's band names bears its federally registered trademark "CTO," and many also end with the name of a New York City locale. Andrea Brown was the lead singer of CTO Tribeca, one of World's bands. In 2008, Brown entered into her own contract with a World client. She then sent emails to the President of World, Carmen Tomassetti, and several World employees, accusing Tomassetti of committing a federal crime by invading her personal email account, and claiming he illegally and immorally took credit for other people's work.

Brown subsequently left World and formed Grand Entertainment Productions ("Grand") and a band called Tribeca Grand, comprised of former CTO Tribeca members. To promote her band, Brown superimposed "Tribeca Grand" over the "CTO" mark in a

2

video featuring CTO Tribeca that World had produced, and then released the video on the Internet. She used "CTO" in Internet metatags[1] and paid Google AdWords, an advertising product, and Yahoo! for the phrase "CTO Tribeca" so Grand would come up under Internet searches. Brown also posted on the Internet that World was "phony" and that they lied to get business. Appellee's Appendix ("App.") at 112. Despite these actions, Brown acknowledged that World was the owner of "the trademarked name CTO Tribeca." Appellees App. at 29.

In February 2009, counsel for Tomasetti and World ("Plaintiffs") sent Brown two cease and desist letters demanding she stop using the names "CTO" and "Tribeca." She ignored both requests. Plaintiffs then filed a complaint in the United States District Court on November 13, 2009 against Brown and Grand, alleging trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125, and tortious interference with contractual relations, defamation, unjust enrichment, and breach of contract under state law.

The process server, who recognized Brown from previously serving her one of the cease and desist letters, testified that, on November 24, 2009, when Brown saw him at the door of her house to serve her the complaint, she shut the door, locked it, and closed her garage. Appellee's App. at 88. The process server knocked again and, after no answer, placed the service papers at the door. Brown alleges she was never served. However, she admitted in a sworn affidavit submitted in opposition to World's damages claims that

---

[1] A "metatag" is a code "not visible to web users embedded in a website to attract search engines seeking a corresponding keyword." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1146 (9th Cir. 2011).

3

she was served on that date and called her attorney immediately after the service. Appellant's App. at 168. She also allegedly provided her attorney with a copy of the pleadings shortly thereafter. Neither Brown nor her attorney took action and on April 6, 2010, the District Court entered default for Plaintiffs.

On May 7, 2010, Brown filed a motion to set aside the default, arguing only that her defense to Plaintiffs' violation of trademark claim was meritorious because "the trademark that is referred to is basically a reference to a geographical location which cannot be trademarked." Appellee's App. at 55. The registered trademark at issue, however, is "CTO." Brown did not provide a response to the other twelve counts of the complaint. Pointing to Brown's culpable conduct in refusing to accept service and failing to answer the complaint, as well as her failure to set forth a complete and meritorious defense, the Court denied Brown's motion. After a damages hearing, the Court found in favor of World in the amount of $429,997[2] and issued a permanent injunction enjoining Brown from using "CTO," but not "Tribeca." Brown continued to infringe upon the "CTO" trademark through the time of the damages hearing, and is allegedly continuing to infringe upon it. Brown appealed the Court orders, arguing the Court erred in finding she received service of process, in failing to vacate the default judgment, and in assessing damages.[3]

---

[2] In relevant part, World's damages include $176,496 for infringing World's trademark and $184,959 for attorneys' fees.

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 for Plaintiffs' Lanham Act claims and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiffs'

4

## II.

Our review of a District Court's legal determinations is plenary, *VFB LLC v. Campbell Soup Co. et al.*, 482 F.3d 624, 630 (3d Cir. 2007), while our review of its factual determinations is for clear error, Fed. R. Civ. P. 52(a). We review the District Court's refusal to set aside entry of default for an abuse of discretion. *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 981 (3d Cir. 1988). We also review the District Court's award of equitable remedies under the Lanham Act for an abuse of discretion. *Banjo Buddies, Inc. v. Renofsky*, 399 F.3d 168, 173 (3d Cir. 2005).

### A.

First, Brown argues that she was not properly served because the process server left the papers at her door and there was no proof she was aware of them, and therefore entry of default judgment was improper. Because a face-to-face encounter and in-hand delivery are not always necessary for proper service of process under Rule 4 of the Federal Rules of Civil Procedure, Brown's argument lacks merit. *See Gambone v. Lite-Rock Drywall Corp.*, 124 F. App'x 78, 79 (3d Cir. 2005) (holding that leaving papers on doorstep after slamming door and announcing service was sufficient); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1095 (3d ed. 2002). Leaving papers in the defendant's physical proximity is usually sufficient if (1) defendant actively evades service, and (2) there is clear evidence that the defendant actually

---

state law claims. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 as an appeal of a final order of the District Court.

5

received the papers at issue when allegedly served. *See Gambone*, 124 F. App'x at 79, 80.

Here, both of these requirements are easily met. Shutting and locking the door after recognizing the process server, and then shutting the garage, and failing to answer the door after the server knocked again amounts to active evasion of service.[4] *See id.* at 80. That Brown called her attorney seeking representation after the service and admitted in a sworn affidavit that she was served show that she actually received the papers when they were served. Thus, Brown was not denied proper service.

**B.**

Further, the District Court did not abuse its discretion in denying Brown's motion to vacate the entry of default against her. A court may set aside entry of default for good cause. Fed. R. Civ. P. 55(c). We have identified three factors a district court must consider in denying a motion to set aside a default: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in United States Currency*, 728 F.2d 192, 195 (3d Cir. 1984). To show a meritorious defense, a plaintiff must assert defenses that would constitute a complete defense to the action. *Id.* Failure to establish a meritorious defense weighs heavily against setting aside the default. *See id.* at 197 (declining to consider prejudice and culpability when the

---

[4] The District Court credited the testimony of World's process server at the evidentiary hearing, noting that Brown's descriptions of the occurrence were vague and she did not remember details. This finding of fact is not clearly erroneous. *See* Fed. R. Civ. P. 52(a)(6).

6

defendant failed to establish a meritorious defense).  As to the third consideration, showing "willfulness" or "bad faith" on part of the defendant leading to the entry of default suffices to show culpable conduct.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182-1183 (3d Cir. 1984).

Brown established neither a complete nor meritorious defense.  In her motion, Brown only provided a defense to one of the thirteen counts of Defendants' complaint, and this one defense was irrelevant.  She stated that her defense was meritorious because Defendants' trademark rests on a geographical location that cannot be trademarked; however, as the District Court pointed out, the Defendants' claim rests on their registered trademark, "CTO."  The District Court never enjoined Brown from using the geographical term "Tribeca" because it decided the equities weighed against it.    Not only did Brown fail to establish a threshold meritorious defense to Plaintiffs' claims, but she also engaged in culpable conduct that resulted in the default.  The District Court did not abuse its discretion in determining that Brown's intentional refusal to accept service and respond to the complaint in a timely manner was culpable conduct because her behavior showed willful disregard for responding to Plaintiffs' legal communications. *See Nationwide Mut. Ins. Co.*, 175 F. App'x 519, 523 (3d Cir. 2006) (finding reckless, willful disregard for repeated legal communications can satisfy the culpable conduct standard).  Not only did she fail to respond, but she also continued to infringe Plaintiffs' trademark despite Plaintiffs' cease and desist letters, the entry of default, and her acknowledgment in writing that the "CTO" trademark belonged to Plaintiffs.  Therefore,

7

the District Court properly considered the applicable factors and did not abuse its discretion in denying Brown's motion to vacate entry of default.

## C.

Lastly, the District Court did not err in assessing Brown's damages. Under the Lanham Act, the plaintiff is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The District Court applied the correct five-factor test in determining whether to disgorge Grand's profits. The factors

> include, but are not limited to (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Banjo Buddies*, 399 F.3d at 175.

The District Court did not abuse its discretion in disgorging Grand's profits because World's sales were diverted to Grand, World's lost profits would be difficult to calculate, and there are no other adequate remedies. Plaintiffs showed that Brown was using their protected trademark in advertising through search engine phrase matching, and thus diverting internet traffic to Grand's website. Further, the District Court determined that Plaintiffs' damages were greater than Grand's profits, but it would be too speculative to calculate the losses caused solely by Grand's infringement. The Court also held that it was equitable to assume the losses Grand caused Plaintiff could not exceed Grand's profits, and thus awarded those to Plaintiffs. In making this determination, the District Court relied heavily on Grand's own documentation. Lastly, without

8

disgorgement, Plaintiffs would be effectively uncompensated given the fact that Brown continued to infringe Plaintiffs' trademark despite Court orders enjoining her. This, combined with the speculative nature of determining World's loses, demonstrates that no other equitable remedies would be adequate. *See id.* at 176 (finding no other adequate remedies when plaintiff's losses would be speculative and not disgorging profits would leave plaintiff wholly uncompensated). Thus, the District Court did not abuse its discretion in making these determinations.

Finally, the District Court did not abuse its discretion in awarding attorneys' fees to Plaintiffs. Under the Lanham Act, attorneys' fees are available in exceptional cases, 15 U.S.C. § 1117(a), which involve culpable conduct, such as "bad faith, fraud, malice, or knowing infringement." *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 280 (3d Cir. 2000). Brown exhibited bad faith and knowing infringement when she continued to violate Plaintiffs' trademark despite cease and desist letters, the entry of default, and her acknowledgment in writing that the "CTO" trademark belonged to Plaintiff. Thus, the District Court did not abuse its discretion in its determination of damages.[5]

## III.

For the foregoing reasons, we will affirm the order and judgment of the District Court.

---

[5] With respect to libel, Brown only argues that the District Court made no analysis of the issue and thus damages are inappropriate. This argument lacks merit because the District Court did analyze the issue. Appellant's App. at 13. Further, Brown provides no arguments against the award of costs, and thus waives this issue. *See Travitz v. Ne. Dept. ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994).