Ali WARIS, Appellant

v.

**HEARTLAND HOME HEALTHCARE SERVICES, INC.**

No. 09–1904.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 4, 2010.

Opinion filed: Feb. 17, 2010.

Ali Waris, Newtown Square, PA, pro se.

Sara A. Begley, Esq., Miriam S. Edelstein, Esq., Henry F. Reichner, Esq., Wayne C. Stansfield, Esq., Reed Smith, Philadelphia, PA, for Appellee.

Before: SLOVITER, CHAGARES and WEIS, Circuit Judges.

## OPINION

PER CURIAM.

Ali Waris appeals pro se from the order of the United States District Court for the Eastern District of Pennsylvania granting

summary judgment and dismissing his discriminatory failure to hire action.

The District Court's opinion thoroughly recounts the undisputed facts and, thus, we will summarize here. In March 2006, Waris, an Asian–Indian native of India, applied on-line for a job that Heartland Home Healthcare Services, Inc. ("Heartland") posted for an administrator of its home health care services office in Plymouth Meeting, Pennsylvania. He was sixty years old at the time. Heartland's senior recruiter, Susan Obriot, screened all applicants for the position, eliminating those who lacked minimal qualifications.[1] Finding that Waris met the minimal qualifications for the job, Obriot sent his resume along with others to the person responsible for hiring an administrator, Heartland's Regional Director of Operations, Leslie Mackey.

Mackey initially picked Waris and three other candidates for interviews. Obriot expressed a concern, however, that Waris lacked the necessary knowledge and experience for the position. Obriot based her opinion on telephone conversations with Waris early in the application process and on his resumé, which showed that he had unrelated experience and gaps in employment. On Mackey's direction, Obriot conducted additional pre-screening. She sent Waris an e-mail correspondence on May 30, 2006, to which she attached a short questionnaire containing seven essay-type questions that were to be answered in one day. Waris was the only candidate to receive such a questionnaire. According to Mackey, Waris's response, submitted a day later, gave vague, one sentence responses that failed to shed any further light on his experience. Mackey inferred from Waris's insufficient response that he did not want the job and she decided not to interview him.[2] As the District Court correctly noted, the record does not reveal exactly when Heartland first notified Waris that he was no longer a candidate, but it does indicate that he was notified on June 29, 2006.

Mackey initially offered the Plymouth Meeting administrative position to a caucasian male candidate, Gregory Field, on June 23, 2006, which he did not accept. Mackey eventually hired Kathleen Lamb in October 2006. Lamb was a fifty-two-year-old caucasian American woman with a nursing degree who was employed at the time as the Director of the Sacred Heart Hospice program. Her prior experience included seven years in management at Lifequest Homecare.

After exhausting his administrative remedies, Waris filed an employment discrimination complaint pro se in the Montgomery County Court of Common Pleas in July 2007, alleging discrimination in hiring on account of his race and national origin in violation of Titles VI and VII of the Civil Rights Act of 1964 (hereafter "Title VI" and "Title VII") and similar provisions of the Pennsylvania Human Relations Act ("PHRA"). He also claimed race discrimination under 42 U.S.C. § 1981, and age discrimination in hiring in violation of the Age Discrimination in Employment Act (ADEA).[3] Heartland removed the matter

---

1. Minimal qualifications required a nursing diploma or degree in business, health care, nursing, or a related field, and a minimum of three to five years experience in an administrative or supervisory capacity in a home health agency, hospice or other related health program.

2. Waris admitted that he spent about thirty minutes on the questionnaire. (*See* Waris deposition, Defendant's Stmt. of Undisputed Facts, Exh. 25, at 407.)

3. Waris also alleged common law fraud, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Act, which he later withdrew voluntarily.

to federal court. After a contentious discovery period (the details of which are set forth in the District Court's opinion at 10–12), Heartland and Waris filed cross-motions for summary judgment, and Waris filed motions to vacate, stay, and recuse pursuant to 28 U.S.C. §§ 144 and 455(a). The District Court denied Waris's recusal motion in December 2008. In February 2009, the court granted summary judgment for Heartland, denied Waris's pending motions (including his motion for summary judgment), entered final judgment for Heartland, and closed the case.[4] The District Court determined that, in the absence of any record evidence showing that Heartland's stated reason for declining to hire him was pretextual under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Waris's employment discrimination claims failed as a matter of law. Waris filed an assortment of post-trial motions, all of which the District Court denied. Waris filed this timely appeal.

We have jurisdiction to review the District Court's final order pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment pursuant to Fed.R.Civ.P. 56(c), and we apply the same standard that the District Court should have applied. *See Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 163 (3d Cir.2006). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Saldana v.*

*Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001); Fed.R.Civ.P. 56(c).

Our task is not to second-guess employment decisions. Rather, we must determine whether the employment decisions were motivated by an illegal discriminatory purpose. In employment discrimination cases under Title VII and the ADEA, we apply the burden-shifting analysis set forth in *McDonnell Douglas*. In a failure-to-hire case such as Waris's, a plaintiff must make a prima facie showing that: (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003) (*citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). Once the plaintiff presents a prima facie case of discriminatory hiring, the burden shifts to the employer to show that the action it took was not discriminatory. *Id.* If an employer presents a nondiscriminatory reason for the decision not to hire, the burden shifts to the plaintiff to "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir.2005). A plaintiff "must submit evidence which (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative

---

**4.** By dismissing all of Waris's pending claims, the District Court implicitly denied his Title VI and § 1981 race discrimination claims and his state law claims. Waris has not presented argument in his appellate brief regarding the denial of his state law claims or of his claims under § 1981 and Title VI. Thus, we deem

these claims to be waived on appeal. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

cause of the adverse employment action." *See Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir.1994).

■ We agree with the District Court that Waris established a prima facie case of race and age discrimination and that Heartland offered a legitimate, nondiscriminatory reason for declining to hire him. We further conclude that Waris failed to rebut Heartland's proffered legitimate non-discriminatory reason. The District Court properly rejected Waris's argument that his educational achievements showed that he was better qualified for the administrative position than Lamb. Both Waris and Lamb satisfied the minimum educational qualifications for the job. Although Waris had about two years more overall work experience than Lamb, Waris's homecare experience was not as current as Lamb's. Thus, we conclude that the differences between Lamb and Waris were not so disparate that a reasonable factfinder could rationally conclude that Waris was clearly the better candidate for the job. *See Mlynczak v. Bodman,* 442 F.3d 1050, 1059 (7th Cir.2006) (evidence of applicants' competing qualifications does not constitute evidence of pretext unless the differences in qualifications are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue).

Waris contends that Heartland treated him differently from other similarly situated Caucasian candidates (Alan Kagan and Kevin Massino) by requiring that he complete a questionnaire. He maintains that

his special treatment shows that Heartland's proffered reason for deciding not to interview or hire him was fabricated. We agree with the District Court that material differences between Waris's application and those of candidates Kagan and Massino show that neither Kagan nor Massino was similarly situated to Waris. Kagan's and Massino's most recent experiences (which were full-time) were more relevant to the job at Heartland than Waris's as a college instructor. Moreover, Waris's application revealed two gaps in employment. In 2005, he was employed for a total of two months as a full-time administrator at a health center. In 2006, he was employed in the spring semester as a part-time instructor of two college-level courses, human anatomy/physiology and medical office management. Waris protests that Heartland should have interviewed him, but Waris is not entitled to an interview and there is nothing in this record to suggest that Heartland's choice to employ a screening questionnaire in his case was inherently invidious. Based on the foregoing, no reasonable factfinder could find that Heartland's decisions to have Waris complete a questionnaire and subsequently to disqualify him on account of his insufficient answers were unworthy of credence. *Tex. Dep't of Cmty Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Next, Waris contends that Heartland's proffered reason was pretextual based on the allegedly inconsistent statements Obriot made in two e-mail responses dated June 29 and July 5, 2006, in which, allegedly, she explained why Waris was not hired for the Plymouth Meeting job.[5] We dis-

---

**5.** Additionally, Waris claims that Obriot's statements to him were false because no one was hired at the time of her e-mail correspondence with him in June-early July 2006, and the person who was eventually hired, Kathleen Lamb, did not submit an application until August or September 2006. The record

evidence shows, however, that Mackey sent an e-mail message to Obriot on June 23, 2006, notifying Obriot of her decision to offer the Plymouth Meeting position to Field. Although Obriot did not mention Field by name in her June 29, 2006 response to Waris's inquiry about the Plymouth Meeting position,

agree that Obriot's statements are inconsistent. Unlike her e-mail response to Waris dated June 29, 2006, Obriot's July 5 e-mail response did not pertain to the Plymouth Meeting position.[6] In any event, even assuming that both of Obriot's e-mail responses referred to the Plymouth Meeting position, we conclude that they are insufficient to discredit Heartland's proffered reason for declining to hire Waris. By the time Obriot engaged in e-mail correspondence on June 29, 2006, she knew that Waris was no longer being considered for the Plymouth Meeting position because Mackey had told her in an e-mail correspondence dated June 23, 2006, that she had decided to offer the job to Field. There is no record evidence, however, that Obriot knew Mackey's specific reason for eliminating Waris as a candidate for that position. The reasons Obriot gave in her e-mail responses to Waris addressed only why Field, in particular, was offered the Plymouth Meeting administrative position instead of Waris, (more experience and a

local candidate).[7] Notably, she did not address why or when Waris was eliminated as a serious candidate. To survive summary judgment on the issue of pretext, it is not enough for a plaintiff to show that an employer's decision was misguided or wrong. *See Fuentes,* 32 F.3d at 765 (3d Cir.1994). For all of the foregoing reasons, we conclude that a reasonable juror could not rationally infer from Obriot's statements that Heartland's reason for not hiring Waris was not credible.

■ We review the District Judge's decision not to recuse for abuse of discretion. *Securacomm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 278 (3d Cir.2000). After a careful and independent review of the record, we find nothing in it to indicate that the District Judge in Waris's case was personally biased against him under 28 U.S.C. § 144, or that a reasonable person would harbor doubts as to the judge's impartiality under 28 U.S.C. § 455(a). *See United States v. Rosenberg,* 806 F.2d 1169, 1173 (3d Cir.1986) (§ 144 standard); *In re*

---

it is fair to infer that she was referring to Field because he was the only person who was offered the Plymouth Meeting job at that time. Obriot did not know until July 9, 2006, or thereafter, that Field had declined Mackey's job offer. (Pltff. Motion for summary judgment, Exh. "R.")

6. On June 28, 2006, Waris sent the following e-mail correspondence to Obriot: "Susan: I did not hear back from you regarding the Plymouth Meeting Administrator position. Also, as I have requested [from] you earlier, I'd greatly appreciate it if you let me know the reason why I have been rejected for the numerous positions I applied for with your company in the last 1–2 years. Your input will help me improve. Thank you." (Pltff. Motion for summary judgment, Exh. "I.") On June 29, 2006, Obriot responded: "I did get back to you and you e-mailed me back and thanked me for letting you know. You were not selected for the administrator position because they went with a candidate that had more experience." (*Id.* at Exh. "J.") On July 2, 2006, Waris sent Obriot another e-mail

correspondence stating, "No, I applied for home care administrator positions in the last several months. And I applied through you." (*Id.* at Exh. "Q.") Obriot responded on July 5, 2006, that "I filled the position with local candidates who were already in the interviewing process prior to receiving your resume. I will keep your resume on file for future opportunities." (*Id.*)

7. Obriot's e-mail responses were not inaccurate. Field's resumé indicates that he had worked continuously in home healthcare in a variety of full-time management positions for about sixteen years (1989 through 2006). Waris, on the other hand, had a total of eleven years of home healthcare experience as a full time executive director (1986–1993 and 2000–2004) and worked as a part-time consultant for 4 years in the 1990's. As for Obriot's second explanation that Heartland picked local candidates, Field's resumé indicates that his work was based largely in Pennsylvania. Waris's most recent full-time experience in healthcare was in Texas and Delaware.

*Prudential Ins. Co. of Am.,* 148 F.3d 283, 343 (3d Cir.1998) (§ 455(a) standard). Even assuming that Waris's affidavit in support of his § 144 motion was timely filed, the District Court properly held that it was legally insufficient to state personal bias. We agree with the District Court that Waris's allegations amounted to mere disagreement with the court's adverse rulings, which does not form a sufficient basis for recusal under § 144 or § 455(a). *See Securacomm,* 224 F.3d at 278.

Accordingly, we will affirm the judgment of the District Court.